Number 182100, Jassilis, Miguelena, Dampena, Panagua, versus William Barr. Thank you. One second. We are respectfully requesting that the board's decision be vacated and proceeded to be remanded to the immigration judge. In this case, the board relied entirely upon a matter of AEB and categorically denying the petitioner's claim. While the respondent here articulates that a general rule prohibiting domestic violence claims was not in fact stated, this is in fact how it was interpreted in the petitioner's case. Just based off of one single line, this matter was dismissed. Essentially, the board stated that because of intervening precedent, the particular social groups that were articulated by the petitioner were no longer cognizable. In doing so, it deprived the petitioner of an individualized analysis, a case-by-case analysis in which the attorney general himself stated was necessary, a rigorous analysis that was ultimately deprived of in analyzing the three proposed particular social groups as to whether or not they were immutable, distinct, particular, or if they were circular. We would argue here that both the immigration judge and the board failed to actually meaningfully address the issues of the particular social groups. The immigration judge, in one line, just stated, I further find that this particular social group is not legally sufficient. Again, the board stated here that it was just because of intervening precedent. They did not go through each element that was required of them. Which social group are you directing our attention to? What's your position? We argued three separate particular social groups. That was Dominican women that were viewed as property and unable to leave a domestic relationship, Dominican women. There was actually a lot of formulation. It was all strictly an alliance of matter-of-the-art CGPIs that were being overruled. Specifically, the particular social groups were Dominican women viewed as property and unable to leave a domestic relationship, simply Dominican women unable to leave a domestic relationship, and Dominican women abused and viewed as property by their romantic partners and who are unable to escape or seek protection by virtue of their gender. Since you did that, the attorney general has said an attempt to define a social group by reference to unable to leave, as I read it, they're saying is inadequate because it's ambiguous and could simply mean because of the persecution, hence you get a circularity problem. Right, and we disagree with that finding. We don't believe that inability to leave a relationship is defined solely by its harm. In fact, the inability to leave really speaks, and what the attorney general did by saying that is it failed to consider the socio-cultural, political aspects and the context which was required in this individualized case-by-case analysis. It doesn't address how the inability to leave is caused by the cultural and gender norms that are assigned to a male and a female in a domestic relationship, particularly in the countries that have patriarchal norms and the issue of misogynistic beliefs. And that's exactly how it is in the Dominican public. But that's why there's that need for individualized assessment as to whether or not... I'm having trouble. When I come across these cases, and we see a fair number of them now, I can't figure out why aren't the petitioners simply defining the social group as women. I think right now people are identifying such, but there is going to be an issue as to encompassing and engulfing the entire population, and that's why there's a particularity in distinctive issues. And that's why... It wouldn't be the entire population. Well, the entire female population. Are you saying you couldn't define a social group as blacks in South Africa in 1970? I suppose you could. And that would be a majority of the population. Yeah, right. But when you then try to come up with a social group that is defined as unable to leave, and part of the reason they're unable to leave is they're being persecuted, then you get into this problem of the first day of the persecution, they weren't a member of the group until they were persecuted. That is correct. And this court has actually said so in Carreras and Robales that a particular social group must exist independently of the persecution, and also be before it. But that really was in reliance on MEVG, and also that fell back into the board's decision of AME and JGU, which specifically said that a particular social group cannot be defined exclusively by the harm that is threatened. So really, just because there's a mention, a scintilla of a harm, does not prohibit the viability of this particular social group. So while there is confusion, it does not impede, in part, by Drew Cabe's ability to determine whether or not a particular social group is actually viable here. In your case, just so I'm following, if we were of the view that women is a social group, can you win? I don't believe so. I think the issue there is that that was the biggest concern. That was like, catch all particular social groups. No, I didn't mean can anyone ever win on that theory. If we were of the view that women is a social group, can your particular client win, given the social groups that were presented to the BIA? By using just a particular social group of women? Possibly. I believe that there is an argument that you can make that she was simply targeted. But I'm not asking it clearly. You obviously didn't make that argument straight up. That's correct. So do you have any argument as to how, since you didn't make that argument straight up, your client could win, since that might be thought to be an unexhausted claim, as the government contends? Well, the position here would be that this intervening precedent that was established while the appeal was pending did not permit us to argue that. We were unable to exhaust it, but it was not through the fault of the petitioner. That would be the only argument there. But my real position here is that the particular social groups— Wouldn't you have another argument, which would be—I'm not saying that the record supports this, but wouldn't you theoretically have the argument that by using the three identifiers that you tried to use, they all have at least one thing in common, and that's gender. That's correct. And that you've established that. And if we decided that that was the relevant social group, then it would seem to me the next question, that you could at least argue that you did establish that. And now we're going to get into persecution-motivation nexus. And so my question would be, if it's not exactly Judge Barron's question, did you— Better than Judge Barron's question. Did you also establish nexus? Perhaps while you were trying to define the social group, but it occurred to me that the government's, I thought, quite reasonable circularity argument does then beg the question, well, if it's not defining the social group, is it defining persecution? Is it defining motivation and nexus? And so can you win even though you tried to define the group more narrowly than perhaps it should have been defined? I believe so. Okay. I'm sorry, let me just— There's the general question of how to think about cases like this, and then there's this particular petitioner, but I'm wondering if— Usually the BIA is given an opportunity to review a particular claim of a social group. I guess there's one possibility of whether we should vacate and remand to the BIA for consideration of that social group. I would agree. But I'd also think that a particular social group, something proposed in itself, even in this fight, maybe, would also be sufficiently— On that score, the key phrase that potentially causes a problem is unable to leave. That's correct. And the potential problem, one, is circularity. I take it your response is the phrase unable to leave doesn't depend on a particular reason for not being able to leave, which is persecution. It could be many different factors. That's correct. That's one problem I've given. Does it depend on it ruling out physical harm of a level that would suffice to constitute persecution being a reason? In other words, the difficulty, as I understand it, in the way that the AG has presented it, is that since it's a general category, which could encompass a reason for being unable to leave, is that I was subject to such violence I felt I couldn't leave. That the social group necessarily is a social group that encompasses some people who have the circularity problem. Therefore, as a whole, the social group can't stand. And what we have to do is define it to rule out that piece of it. So what are we supposed to do with that aspect of the government's position? Well, I think that the issue here is that the legal framework doesn't speak to an actual bar to these types of particular social groups. In fact, in various cases, a particular social group hasn't recognized where there has been some type of harm that's been identified. I mean, we look back to the 1996 case in the matter of Kasinga, where a particular social group was identified as a woman who had opposed the idea of female genital mutilation. But the thing that got you into the group was not having been subjected to the harm that would count as persecution in that instance. And the problem here the government has identified is that unable to leave because of the breadth of the category could include some persons who only get into the group by virtue of the harm they suffered. I understand. And it certainly seems to me right that there are many people in the group that's defined by unable to leave who are not of that type. But the phrase is general enough that it might include some people who are of that type. So what are we supposed to do with that? That's why there must be a case-by-case analysis. And while that concern is legitimate, that is only for the purposes of past persecution. That doesn't address the issue of well-founded future persecution in light of the fact that there was some type of harm that was experienced. What do you do? You tell us in the brief that the IJA and the BIA ruled against you also on the grounds that you didn't satisfy the unwilling or unable requirement of government involvement. And you argued you did satisfy. I argued in this case that the immigration judge failed to consider the record as a whole. The immigration judge failed to consider the two subjective claims of reporting to the police over a span of seven years. The record did not cite this. You've got a standard of review problem, though, on that. Well, I think the record, in fact, would compel otherwise. The country condition reports would speak differently to this. In this court, in Jusso-Hartmere, Rosella's made these two separate distinctions. But Rosella doesn't help you because Rosella, the standard of review was flipped on its head from what we have here because the IJA had actually ruled in favor of the petitioner. And so the subject for us was whether that was so clearly wrong that the BIA, without making fact-finding, could reverse it. Here, you've got just the opposite. The IJA finds against you, and so... Well, the IJA didn't meaningfully look at the issue of unwill... I'm sorry, inability. Even if the IJA was able to find that there was a willingness to protect the petitioner in this case, it did not look at the entire record. He said he did. How do we know? Don't we assume that he looks at the entire record? We can assume that, but the record would show otherwise. On that point, I'm not quite sure that we've always been so clear as to what we're supposed to look at for unwilling and what we're supposed to look at for unable. So, for the moment, forget those names. As I understand the record, there does seem to be evidence in the country reports of a countrywide apparatus for dealing with domestic violence claims of some sort. In this particular case, there's also evidence, if I'm right, of two reports being made to the particular local authorities. And those two reports each alleged a threat to kill. And am I right that they're captioned attempted homicide or something like that? Yes. And am I right that the record then shows that, as far as we can tell, no investigation was done in response to either report? That's quite correct. So, on that record, I don't know if that shows inability or if that shows unwillingness. I think it shows a little bit of both. Yeah. So, what would be the best authority to show? And, I guess, as I read the IJ's opinion, I was having trouble understanding what the IJ's account of that aspect of the record was that led it to conclude that they were willing and able to address the problem. I think that that was the issue, too, that this decision was a meaningfully particular. There wasn't any type of individualized decision, a meaningful decision-making here. What's your best authority that indicates that when a country has a general apparatus for dealing with these domestic violence or some crime or some persecution, but then in the particular case when there are reports filed of the type of offense and no investigation is done in response to them, that that would show that we are compelled to find it was unwilling or unable? Again, I looked into Justo Javier Rosales. I mean, this court specifically stated that even though there are laws that are made, this is just a mere window dressing. It doesn't show to the effectiveness of whether or not something could, someone actually would be protected. That doesn't answer Judge Barron's question. He's presuming that generally, nationally, there is this infrastructure, but you've got this specific concrete example of a local instance in a filing. What do we do then? Is there authority that says we look only at the sort of geographic window that's relevant there to those particular incidents, or as A.B. suggests, do we have to consider relocation? I think relocation is an issue that's a separate issue, but we would have to look into the Department of State. And was there a finding on relocation here? There was not. There was no, I don't believe that there was an actual finding into this in the Best Buy collection. Why do we, maybe, this has puzzled me since I've been looking at these cases, an issue here is in the Dominican Republic are the authorities unable or unwilling to enforce domestic violence laws? Why are we in other courts deciding that on a case-by-case basis? I mean, isn't there more or less one answer for each country, and this should be done somehow by a regulatory approach? I think it has to do with the contextual nature of each and every petitioner's specific case. Certain people may be protected while sharing a common characteristic while others are not. That's basically the position that we take here. But if some with the same characteristic are protected and others are not, that suggests that you've got an access problem, that there's something else driving who's getting protected and who isn't. Well, with respect to the Nexus issue, we follow a mixed motive jurisdiction. So, I mean, I think that resolves that. That's why a particular White House case is necessary for each and every case, to look at whether Nexus is satisfied in a certain case, and whether government action is available for a certain case as well. What we know here, for example, in the 2016 Department of State reports, is that yes, and this is what the IGA reason was, that of the 32 provinces, 18 of those provinces did have these type of units to protect them as a balance. But that also means that 14 of them otherwise didn't. Do we know if this one did or didn't? I'm not sure to the best of my knowledge. I don't believe there was a specific finding into this. But I think that there is, obviously because of the petitioner's own self-reports. She went to one of those places. Exactly. So that was a local authority that she did report to. But that would in itself show that there is an inability, even though there are these units that are available. It also shows that there's a 33% increase annually. Well, let's see. The thing that's – I thought we have case letters that says with respect to inability, it has to be an inability of a kind beyond the kind of inability that all legal systems suffer from in being able to be 100% perfect in preventing crime from occurring. I mean, it's not just because a particular crime was committed and they didn't find the perpetrator. It doesn't show that they're unable to solve the problem any more than the fact that crime continues to occur all over the world shows that you'd say they're unable for purposes of the asylum statute. It's got to be something more than that. Here, though, you've got a circumstance in which it seems like they haven't even investigated despite the two reports. I agree, and that would point to the unwillingness to protect someone like the petitioner in this matter. It's the unwillingness to protect these type of gender-based crimes in this type of country, which is why we believe that the inability to leave in itself cannot – it's not the functional equivalent of being harmed or being an abuse victim. This brings me back to Judge Barron's question, though. Suppose you've got a precinct where the chief of police says, I don't believe in investigating these crimes, and so just ignores them. But in the context of a country that is largely mobilized towards a special focus on enforcing these crimes and doing so, what does the BIA then do with that scenario? I'm sorry, I'm just a little confused as to that question. In other words, you've got non-enforcement in one locale amidst a countrywide enforcement that would be found to be adequate. So what do you do then? That's why you have to make that case-by-case analysis and look to whether or not the location would be actually reasonable. That's what the case law states. But do you have a case or authority that would help us conclude that you're right about that? I don't believe so, but I'll try it. We need to move along, so we'd better wrap up here. Thank you. Thank you. May it please the Court, this is Eunice Lee, appearing on behalf of Amicus Center for Gender and Refugee Studies. Your Honors, I would like to focus my discussion today on the legal errors in the Attorney General's decision in matter of AB, which conflict with our asylum laws and merit overruling by this Court. I will focus my discussion, based on Your Honor's questioning,  in the Attorney General's decision in matter of AB, and I will focus my discussion on his errors, specifically with regard to a particular social group. Although if there's time, I would also like to address his error in stating that generally these claims should be precluded from asylum eligibility, with only certain exceptions to apply. With regard to a particular social group, there are three major errors in the Attorney General's decision. The first is a distortion of the case law. The Attorney General cites to matter of MABG to supposedly support his interpretation that a social group that is defined even partly by the harm fails. But the Board of Immigration Appeals has never said this. What social group are you arguing in favor of? The failure of the social group in matter of AOCG, which is the Unable to Leave requirement. Yes, the Unable to Leave. And Your Honor, that's my second point, is to get to why the Attorney General's analysis on inability to leave was also incorrect. But I do want to point out the distortion of the case law that is as presented in AB and is also further distorted in Respondent's Briefing. The Board of Immigration Appeals has never said that a social group cannot be defined even in part with a scintilla of tangential reference to the harm. Instead, it has said that a social group cannot be defined exclusively by the harm. And it has never meant the two things to be equivalent. For example, in matter of MEVG, and this is, I point your court's attention to matter of MEVG's citation to CCB Holder, which is a Seventh Circuit case that we cite in our own brief, in which the court, the Board explicitly quotes CC's formulation that a social group that is not defined solely by the harm may survive the circularity principle. And that is quoted at matter of MEVG at page 243 of the decision in full. The quote from MEVG of CC states that a social group cannot be defined merely by the fact of persecution or solely by the shared characteristic of facing dangers and retaliation for actions they took against their persecutors. And that MEVG... What do you do with the issue? I don't see where the PIA has dealt with prior to this with the issue of at the time of the first persecution the person is not a member of the group. The PIA has actually addressed that situation in MEVG and stated that, in fact, the circumstances of past harm can be relevant to the particular social group analysis and give rise to a cognizable particular social group when considering well-founded future fear. And this is also, I would point your court's attention to the Third Circuit decision in Luquago v. Ashcraft which makes this principle clear as well, that past harm is neither disqualifying to a social group and that, in fact, there has to be a context and fact-specific analysis of circularity including, in the Third Circuit, the court very logically parsed out why a group would fail as circular. The social group there was former child soldiers who'd been inducted and enslaved by the rebel groups, why that failed as a past persecution, but the Third Circuit went on to explain that it was not circular with regard to future fear and well-founded fear of future persecution. I understand the logic of this internally to the question of whether the social group of being unable to leave can be defined in a way that doesn't make it circular. Everything you say logically tracks for me. But what then starts to happen is, necessarily, unable to leave takes on a meaning in which certain grounds for being unable to leave must be ruled out. Right? Otherwise you run into the problem Judge Gallagher raises. And so you've explained how it's not necessary to include the kind of case he is talking about because we could find other grounds in which we avoid that problem. But the problem that then arises is, when we get to, is this amorphous or socially distinctive, you must imagine the society thinks about the group of women that are unable to leave as a coherent group that kind of rules out the ones that were forced to rule out because of the circularity problem and includes the one that aren't ruled out by the circularity group. And that starts to seem to me a more difficult thing to figure out how we're supposed to think about. So how could you help me with that aspect of the problem? That's a very good question. And that actually brings me to a related point, which is that the key here is that the circularity, the application of the circularity principle is case-specific and is context-specific. But the more you say that, the more you run into the question of how is the group then distinctive and not amorphous? In other words, if the group's dependent on case-specific determinations each time, what was the reason why you were unable to leave? And we can't define the group apart from that case-specific knowledge. How can we be confident we can describe the group as not being amorphous and as a group that's socially distinctive? Now, there may be an answer to it, but what is the answer to that? I think the answer, Your Honor, is that social distinctiveness does look to whether the society views the group in question as a group, in fact. But isn't the group including... Look, you're making a very good point that there can be unable-to-leave scenarios that fully qualify and don't have the circularity problem. But given its ambiguity, there can be ones that do run into the circularity problem. So why bite this off? Why deal with it? Why not just define the social group as women, which are probably going to be found to be a distinct social group in the society, who are then, in particular societies, subjected to certain types of persecution because they're women that men are. And it's when you start narrowing it down you get into these distinctiveness problems that Judge Barron's talking about. Well, Your Honor, we certainly do think that a group defined by women would survive particular social group analysis in many cases, including in domestic violence contexts. And for that, actually, I would point Your Honors to a Ninth Circuit case. It's cited in our brief as well as in some of the other Amici briefs. Sylvester Mendoza 729. It's unpublished. Appendix 597. That does look and see, in the context of domestic violence, that a gender nationality social group encapsulates what the Ninth Circuit calls the, quote, gravamen of an asylum claim based in domestic violence. But I do want to answer your question because I think that it's important to clarify two things. First, the inability to leave. When the Attorney General discusses this, he makes a broad finding as to all women in all relationships in any societal context that the inability to leave necessarily results from the threat of persecution or the persecution itself. And it's simply unreasonable and speculative to make this sort of factual conclusion across multiple, you know, across all conceivable claims in society. Because you've got an amorphous definition. I mean, you're actually advancing the argument that supports what the Attorney General did. I think whether the group is amorphous or not is also a context-specific question. And that is something that the Board of Immigration Appeals has always stressed. So, for example, in matter of MEVG, the Board states, quote, the particular social group analysis does not occur in isolation, but rather in the context of the society out of which the claim for asylum arises. And that's page 238 of MEVG. Well, so can you help me with that? How do I... And I take that point. I'm not sure how to think about it. There is an apparatus to address domestic violence in the Dominican Republic. That would seem to support the idea that it's thought of as a distinctive social group. Otherwise, why have an apparatus surrounding this particular concern? But how do I relate that to the problem we've been discussing, which is that that group can't be defined circularly. For purposes of reasons that the Dominican Republic doesn't have to care about. When they think about setting up their apparatus, they'd like to get everybody protected, including the people who are unable to leave because they've been subject to persecution. So you see what I'm... I need to be able to put those two together to be able to think about the problem of whether this is a social group within the meaning of the statute, the way it's been constructed and the way it's being construed by the AG. I think that that does present an issue if an inability to leave formulated social group is per se circular. But what I've been emphasizing is that it's not. There are multiple factors, and Petitioner's Counsel explained this as well, that can go into a woman's inability to leave. And it's simply irrational and unsupported to assume that that will always be the case. So I would stress that both for applying the circularity principle and then later to looking whether at the social distinctiveness of the group at issue, that you look at the context in which the group arises to apply the circularity principle as well as to apply the social distinction inquiry. And that actually, in Perez-Rabanales, is precisely what this court did. It did find that the group presented... First of all, it distinguished that group from the ARCG group, which it said was like comparing carrots to cucumbers to the Perez-Rabanales group, which was formulated as... But who are unable to receive protection. But even putting that distinction aside... Was that... That's Perez... And we concluded that was a qualifying group? That was not. But the point I wanted to point out, Your Honor, was that, first, that social group was distinguished from the ARCG formulation by this court, but also that at the very end of this analysis, in applying the circularity principle, this court looks to the evidence in the record and explicitly states... Looks at what evidence the petitioner has offered to show the social group. And after finding that the group does not qualify in circulation, goes on to make a social distinction holding. So these are two... The point I'm trying to make, Your Honor, is that both the circularity analysis and the social distinction analysis have to be applied in... You're pushing so hard for this that I assume that there's some benefit to the actual human beings who are seeking asylum. What is that? How are those people benefited by developing and arguing for a social group like the one you're advocating, as opposed to simply saying the social group is either women or women in domestic relationships, and then moving on to the nexus issue and the state action issues from there? Your Honor, I think that this court could very well provide guidance to the Board of Immigration Appeals that considering a gender plus nationality social group in this context is something the Board has to do under its precedent. Well, I'm sorry to do this to you, but this isn't your first rodeo, and we're looking for help. So what have you run across in terms of objections to defining the group that way, and how do you respond to those objections, if you're in a position to tell me? Yes, well, many times the Department of Homeland Security as well as the Department of Justice would argue that those groups are overbroad and amorphous. We would disagree with that contention. We think also that a social group based, say, on Guatemalan women also has to be analyzed case by case in context. But yes, those are the sorts of objections that the government has raised. However, we absolutely do think that that group should be recognized as customizable. But I take it that it would be true that maybe just a guess, there are a number of asylee petitioners who, for whatever reason, have presented their claims of asylum as claims like this one, narrower than women or women in domestic relations. So insofar as we concluded that is the only route to go through, all those asylee petitioners are out of luck unless we have some reason to say that there's a reason to vacate a decision like this one so the BIA can consider gender only. Well, we think that the Board here did not conduct in a case-by-case individual analysis, even of the social groups presented, and Petitioner's Council addressed that as well. But I do think, to your broader point, the Board can consider social groups that are substantially similar to those presented. It does have a precedent whereby it limits the ability of respondents to appear before the Board and argue new social groups. But yes, a social group based on gender and nationality is substantially similar in our view to a social group based on gender and nationality, relationship status, and inability to leave a relationship. With that said, Your Honors, the reason that my focus is on whether the Attorney General's discussion of the inability to leave social group is rational and supported by analysis, as well as whether it properly constitutes a case law, is because we do urge this Court to reject the Attorney General's social group discussion under Chevron Step 2 as unreasonable, inconsistent, and unexplained. Thank you. Thank you, Your Honors. May it please the Court. I'm Kristina Greer on behalf of the United States Attorney General. I want to start by making two points. And the first is that the Board has clearly stated that groups must be defined independently of the harm. That was the crux of footnote 11 in matter of NEVG, where the Board noted that DHS urged it to find that and it said it didn't need to because that's what it meant all along. So to the extent that... What's the reason for the Board having that view? The reason for the Board having said that... Our position is that it would be because the term exclusively or saying that it cannot be exclusively defined by the fact of persecution or exclusively defined by the harm, as the Board had previously stated in matter of AME, JGU, and matter of CA, the reading of that is not required to say, well, you can define it by something else in addition. It's that it could also be a reading that what the Board meant is that the group can't be defined exclusively by the harm. So if it's a hybrid group where the harm is even a part of the group, that still necessarily means that everyone in that group is subject to that harm. And so that does define the group exclusively by the harm, even if you add other things. And that's even... But clearly the category unable to leave doesn't run into that problem in all instances. It doesn't, and that's my second point. It was reasonable for the Attorney General in matter of AB to draw a clear line because of the issues that the Court identified in prior argument that unable to leave turns into a fig leaf in many cases for the persecution itself. But not all. Not all. So the BIA seemed to rely on matter of AB here. Yes. But it didn't explain that this was not the fig leaf, that this was the fig leaf case. It did not. So isn't that an error just on your own account of its reading of AB? No. What we're arguing that matter of AB held is... No, no, not what matter of AB held. Yes. The BIA here relied on matter of AB. Correct. You just said matter of AB distinguishes between types of cases so that some unable to leave cases might run into the circularity problem and some might not. Oh, I apologize. I must have misspoke. What I mean is that in matter of AB, the Attorney General reasonably drew a line and said that inability to leave has become essentially, A, in many cases it has become a fig leaf for hiding the persecution. And therefore it's reasonable to apply a bar in those cases in which it's not? Yes. And the reason it's reasonable is because what ends up happening in these cases is the petitioners or the applicants argue, well, I wasn't able to leave here because I was harmed. I wasn't able to leave here because I was harmed. But if there are non-persecution reasons why the person would be unable to leave, those can be added to the group. As we argued, if marriage in a country includes this idea that one can't leave it, then marriage itself is all that's needed in the group. Unable to leave is superfluous and makes it confusing and actually makes it look like, if you say, married women who are unable to leave the relationship. So that means there are some married women in those countries who can leave. Then what sets them apart? And unable to leave was initially brought in or was discussed in matter of ARCG as being sort of, it made the marriage immutable because the idea which one couldn't leave a marriage. Well, then marriage is sufficient and so unable to leave is not required if it means something other than the harm itself. For example, if there are certain groups within a society where marriage is within those groups or relationships within those groups for whatever reason cannot be left, that's a question of proof for that group. It's not a term that needs to be in the group that then lends itself to arguing over whether the person was actually able to leave because, for example, in the Ninth Circuit case that we cited, because her ex kept stalking her. Well, that doesn't speak to the societal context or religious context or mores or any of the things that Petitioner suggests are the reason for unable to leave. But then when we look at the actual facts of the case, even in this case, Petitioner never testified that there was a reason she couldn't leave other than his continued pursuit of her. What do we do about chronology here? As I understand it, Petitioner staked out her position under this unable to leave scenario. AB then came down. The BIA then decided AB should there be any opportunity to react to AB and redefine the social group. Obviously, we couldn't do it. We'd have to let them exhaust it, but for a remand for that opportunity. Your Honor, the First Circuit considered such a situation, actually with matter of ARCG, in Cardona v. Sessions, I believe. Yes, Sessions. 848F3, 519. And there the court, and it's at page 522, there the court stated that counsel can always file a supplemental briefing after a new case comes out. And because they didn't in that case, the argument had been waived. And so here, matter of AB was decided June 11, 2018, and the board made its decision four months later, I believe four, or five months later on October 18, 2018. So there was plenty of opportunity for Petitioner to file supplemental briefing with the board, to urge remand because of a new particular social group formulation, and Petitioner could have set forth women as a social group, or married women, or any other formulation, and Petitioner could do that as Petitioner set forth three different groups. So that also undercuts the idea of necessarily relying on that case when Petitioner set forth multiple groups. There's always been the ability to set forth, I don't want to say as many groups as one wants, but one can definitely set forth multiple groups. How has the government managed to, I don't know if scare is the right word, but chase the other side into getting these narrower and oddly defined groups, as opposed to just saying women or women in a domestic relationship? Would there be a problem in this case, for example, if the Petitioner had simply said women in a domestic relationship in the Dominican Republic? What's wrong with that? I can't say, when it comes to the evidence in the record, what would be sufficient for the immigration judge or the board. I defend the board's decision, and that would be an agency determination on whether the evidence in this record supports the fact that a group formulated in that... It would be a pretty unusual country where women weren't a distinct social group. I can't concede that. But I can say that the requirements for a particular social group are an immutable characteristic. Particularity is a question of line drawing. Can we tell who is and is not within the group, and specifically by the terms, as they're used in that society? And the third is social distinction and whether they're seen as a group by that country. Doesn't the fact that there's all this apparatus to address domestic violence indicate that they are seen that way? I can't make that statement as, like I said, I am defending the board's decision, and there are no findings by the board on that in this case. With respect to the board's decision, I'm not sure I'm tracking your account of the logic of matter of AB's conclusion. If I understood it, you're saying unable to leave, per se, can never be part of the definition of a viable social group. Yes. And matter of AB holds that as a categorical matter. Yes. And what is the non-arbitrary reason for so concluding, given that it is self-evident that there are some instances in which the reason one is unable to leave is not because of the harm that has been done to them? There are two answers to that. And the first is it's reasonable because when it is a reason that's not the harm, so if it's religion that prevents someone from leaving, that can be put into the group definition instead of unable to leave. So a religious marriage, a winning in religious marriages in the Dominican Republic. That's true. Why is that a reason to rule out the category unable to leave? And that brings to the second point, which is that because in most cases what ultimately happens is the question becomes whether or not harm is what kept the person. And that's true, too, and that would be a reason in those cases for the person to lose on circularity grounds. Yes. What is the reason, then, for saying that in all cases, unable to leave can't count? I haven't heard that explanation. And so that would be because this is such a convoluted question of what is a particular social group, and we know that they can't be circular, and we found that this phrase lends itself to circularity. Is that a relevant factor? I don't understand where that is under the BIA's mandate that they get to say that a phrase... I just don't... What factor are you relying on there? That's not amorphousness. That's not social distinctiveness. That's not particularity. That lends itself to... That's not in the statute, that idea of lends itself to something. I just don't know where that's coming from. Why is that... It just sounds like a different, non-relevant ground for choosing to rule out a category for a social group. So particular social group is ambiguous in the statute. It's not defined. And so the attorney general here is relying on this idea that the group must be defined independently of the harm. And, for example, in matter of ARCG and even in matter of AB, what was relied upon for inability to leave was the harm. So those cases lose. In this case, if the facts show that's not what they're relying on, why wouldn't she win? Because the group could be defined by the actual characteristic that puts her in the group of unable to leave. Why does it have to be? Because the group needs to be defined with terms that are seen in that society so that they aren't amorphous. And so it does lead itself to amorphousness if we don't know who is and is not in the group because we're not sure, well, unable to leave, what does that mean here? And if we're consistently trying to figure out, well, what does unable to leave mean in this case? Does it mean the harm? Does it not mean the harm? By disallowing the use of the term unable to leave and requiring that petitioners actually set forth the characteristics that unable to leave comes from, it's a question of proof. It's not a question of in the group. And so it's reasonable to put petitioners to that burden of actually delineating a group that can then be effectively analyzed. What do we do about the fact that in the Dominican Republic they've defined, like many societies have, the group based on an idea of domestic violence with all the notions of being unable to leave. In other words, the society we're dealing with seems to have set up an apparatus which seems to track this exact problem the way petitioners define it. And then unable to leave is superfluous. To what? If the group is, what you're saying is that it seems as though Dominican women in a domestic relationship can't leave? No, they have a domestic violence apparatus. I assume that's not because of all women domestic. They seem to think there's a particular problem of violence that must manifest itself, and I bet you look in the studies and why they have it. Isn't it because of the idea that it's a known thing that many women in domestic relationships are unable to leave and therefore are at a particular risk of violence? Then that sounds like one is defining the group by the harm. I didn't say harm. Unable to leave. And therefore are at risk of violence. Not unable to leave because of violence. Unable to leave which makes them at risk of violence. And so you're saying that there are women who are able to leave but those who aren't and that the government actually distinguishes between the two? I assume that's why most societies have developed this whole apparatus to target domestic violence for particular protection. Because it's that exact analysis. I don't know that the government actually distinguishes between those who can and those who can't leave such that it covers women who can leave but not women who can leave. The governments don't seem to distinguish along those lines. And so that also brings up, which is a social distinction and particularity question, whether the term unable to leave is actually defined in those countries. And again, that comes to our argument that it's really proof. It's part of the evidence to prove that the group is immutable. So such that marriage is immutable because one can't leave it. Well, then that's part of proving the immutability of marriage, not a separate term within the group. And so our second argument, we argued about the – I see that my time is quickly concluding. Does the court have any questions about the unable or unwilling portion of the board's decision? Hundreds. Very good. So we argue that the board's decision or that the record does not compel a conclusion contrary to the board's decision or to the agency's decision that the government was not unable or unwilling to protect Ms. Gepena in this case. First, the country conditions evidence shows that there is an apparatus for dealing with domestic violence claims specifically. And Ms. Gepena did take advantage of this. So we know that they are at least willing. There is an apparatus in place. And Ms. Gepena went to these twice. She went to the special office and filed complaints. But as we noted in our brief, the record doesn't compel the conclusion that they were unable or unwilling to protect her for two reasons. First, in neither of those complaints did she state any harm occurred. She states psychological harm and pressure, but she didn't explain or the complaint says nothing about the extreme physical harm that she alleged in front of the immigration judge. So this isn't a question of credibility. She was found credible, so we're not saying that the harm didn't happen. But the evidence suggests that she may not have told the officers that she was actually harmed. Instead, she said she was threatened. So we don't know. There's a gap in the evidence about whether there was actionable action. Doesn't it say attempted homicide in the report? It does. The title says attempted homicide, but it doesn't actually state that he touched her. But you wouldn't have if it was attempted. You could threaten to kill. Yes. So that's what she reported. That's not investigated. We actually don't know if it was investigated because she said she never followed up. She says it wasn't investigated, but there wasn't additional questioning about, well, did you go check? Did you ask anyone? And when she did report him for not paying child support, the authorities went and arrested him. So there is evidence at least that there is some sort of willingness on the part of the authorities to arrest him. But the evidence here isn't. I'm not saying that this conclusively shows X, Y, or Z, but it doesn't compel the contrary conclusion. It doesn't compel that they were unable or unwilling. And that's the standard here. What goes against her? Her testimony was found to be credible? Yes. So she credibly testified that twice she reported that there was an attempt at homicide through threats to kill and that nothing was done afterwards, correct? That's what she stated. What rebuffs that? We don't have any facts in the record stating how she knows they did not investigate. She just said, I talked to them. They said they would investigate, but nothing happened. But no further questioning was asked about, well, did you go follow up? Do you know that they went and talked to him? There were several years apparently where he didn't talk to her at all and nothing happened. So there is evidence that perhaps something could have happened, but that isn't in the record. And additionally, I apologize. There was another point that I was going to make. But like I said, when she did report him for not paying child support, they did go and arrest him. So there is evidence, like I said, that the government is willing to take actions against him for her benefit. Thank you. Thank you. Thank you all.